**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| State Farm Fire & Casualty Company, | No. CV-25-04479-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Elina Perez, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's motion for leave to serve Defendant Cira Gabriela Carrillo Palacios ("Defendant Palacios") via publication and for an extension of the service deadline. (Doc. 15.) For the reasons that follow, the motion is granted.

## BACKGROUND

On or around September 10, 2025, in anticipation of filing this lawsuit, Plaintiff hired a private investigator ("the Private Investigator") "for the purpose of specifically trying to locate Defendant Palacios." (Doc. 15-5 ¶ 5.) Plaintiff also "sent three letters to Defendant Palacios' last-known address" in Avondale and "attempted to contact Defendant Palacios telephonically no less than four times." (*Id.* ¶ 4.)

By September 23, 2025, the Private Investigator "had independently made several unsuccessful attempts to communicate telephonically with Defendant Palacios and her known relatives." (*Id.* ¶ 5.)

On September 23, 2025, "the Private Investigator's Spanish fluent colleague visited [Defendant Palacios's] last known residence [in Avondale] at 6:40 p.m., observed a vehicle

registered to Defendant Palacios parked there, and noticed that the residence's interior and exterior lights were on.  After she rang the doorbell a second time, the interior lights turned off.  She rang a third time, but no one answered.  The Private Investigator's colleague therefore left a letter from [Plaintiff] inside the front security door, and noticed that there was a 'For Sale' sign posted outside the residence." (*Id.* ¶ 6.)

On September 28, 2025, "the Private Investigator returned and observed Defendant Palacios' vehicle parked outside.  The Private Investigator rang the doorbell three times, but no one answered.  The Private Investigator therefore left a business card in the door and texted Defendant Palacios to confirm receipt of [Plaintiff's] letters, but received no response." (*Id.* ¶ 7.)

On or around October 3, 2025, "the Private Investigator called Defendant Palacios' son and left a message.  The Private Investigator additionally called Fernando Quevedo, suspected of living at the last known residence, who answered the phone and said, 'I don't know anything,' before hanging up.  The Private Investigator additionally texted Defendant Palacios and Fernando Quevedo, with no response." (*Id.* ¶ 8.)

That same day, "the Private Investigator again visited the last known residence and observed Defendant Palacios' vehicle in the driveway, but again no one answered the door. The Private Investigator also made contact with a neighbor north of the residence, who told the Private Investigator that Defendant Palacios goes in and out of the residence frequently. The Private Investigator remained in the area for approximately one hour, but no one arrived at the residence during that time." (*Id.* ¶ 9.)

That same day, "the Private Investigator also visited a nearby UPS Distribution Center where Defendant Palacios' vehicle had previously been spotted several times.  But Defendant Palacios' vehicle was not present at the time, and the employees at the UPS Distribution Center would not confirm whether Defendant Palacios worked there or not, but accepted a copy of [Plaintiff's] letter.  The Private Investigator also called a realtor believed to be associated with Defendant Palacios (presumably the realtor listed on the 'For Sale' sign) and left a voicemail." (*Id.* ¶ 10.)

On or around October 4, 2025, "a colleague of the Private Investigator visited the last known residence, but there were no vehicles observed at the residence.  Instead, there were signs that individuals might be in the process of moving.  On October 5, 2025, the Private Investigator returned and observed no vehicles.  The Private Investigator took note of the fact that documents previously left at the residence were no longer at the front security door."  (*Id.* ¶ 11.)

On October 13, 2025, Plaintiff learned from one of its agents "that Defendant Palacios had provided that agent with a new address in connection with requesting a prorated premium refund after cancelling her State Farm policy, and State Farm transmitted the new address to the Private Investigator.  The new address was for an apartment located" on Black Canyon Highway in Phoenix.  (*Id.* ¶ 12.)

On October 22, 2025, "the Private Investigator visited the new address and 'a lady with slicked back[ed] hair answered the door [but] would not give her name' and said only she was 'visiting a male friend.'  The woman would not disclose who she was visiting, confirm if Defendant Palacios lived there, or accept a letter the Private Investigator intended to deliver to Defendant Palacios.  But the woman accepted the Private Investigator's business card."  (*Id.* ¶ 13.)

On November 3, 2025, "the Private Investigator obtained a photo of Defendant Palacios, whom the Private Investigator 'definitely' believed looked like the woman who had answered the door just days before.  The Private Investigator returned two days later, but no one answered."  (*Id.*)

On or around November 12, 2025, "the Private Investigator went to the post office and asked whether Defendant Palacios had submitted a change of address or a forwarding address.  But the Post Office informed the Private Investigator that Defendant Palacios had submitted neither."  (*Id.* ¶ 14.)

On December 3, 2025, Plaintiff filed the complaint. (Doc. 1.)  In broad strokes, the complaint alleges that Defendant Elina Perez ("Defendant Perez") filed a wrongful death action against Defendant Palacios in Arizona state court, and Plaintiff seeks a declaration

that it has no duty to defend or indemnify Defendant Palacios in that action.  (*Id.*)

On December 5, 2025, Plaintiff obtained a summons issued to Defendant Palacios at the aforementioned address on Black Canyon Highway in Phoenix.  (Doc. 6.)

On December 12, 2025, and December 16, 2025, a process server made unsuccessful attempts to serve Defendant Palacios at that address.  (Doc. 8.)  During the second service attempt, the process server "spoke with a leasing agent who . . . confirmed [the apartment] is currently vacant."  (*Id.*)

On January 6, 2026, Plaintiff obtained a summons issued to Defendant Palacios at the aforementioned address in Avondale.  (Doc. 10.)

Between January 7, 2026 and January 14, 2026, a process server made six unsuccessful attempts to serve Defendant Palacios at that address.  (Doc. 13.)  During some of those service attempts, the process server heard activity inside.  (*Id.*)

On February 27, 2026, Plaintiff filed the pending motion for leave to serve by publication and for an extension of the service deadline.  (Doc. 15.)

**DISCUSSION**

Rule 4(e) of the Federal Rules of Civil Procedure provides that an individual (with exceptions not relevant here) may be served in a judicial district of the United States by:

(1)    following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2)    doing any of the following:

(A)    delivering a copy of the summons and of the complaint to the individual personally;

(B)    leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C)    delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

(*Id.*)  Under Rule 4.1(d) of the Arizona Rules of Civil Procedure, an individual may be

- 4 -

served within Arizona using the same methods outlined in Rule 4(e)(2) of the Federal Rules. (*Id.*)

Rule 4.1(k) of the Arizona Rules provides for alternative means of service: "If a party shows that the means of service provided in Rule 4.1(c) through Rule 4.1(j) are impracticable, the court may—on motion and without notice to the person to be served—order that service may be accomplished in another manner," in which case "the serving party must make a reasonable effort to provide the person being served with actual notice of the action's commencement" and must, at a minimum, "mail the summons, the pleading being served, and any court order authorizing an alternative means of service to the last-known business or residential address of the person being served." Impracticability in this context requires "something less than a complete inability to serve the defendant" and even "something less than the 'due diligence' showing required before service by publication may be utilized." *Blair v. Burgener*, 245 P.3d 898, 901, 903-04 (Ariz. Ct. App. 2010). In the context of Rule 4.1(k), "impracticable" simply means that the traditional means of service have proved to be "extremely difficult or inconvenient." *Id*. at 903.

Furthermore, Arizona's Rule 4.1(l) provides that "[i]f a party shows that the service provided by Rule 4.1(c) through 4.1(k)—including an alternative means of service—is impracticable, the court may, on motion and without notice to the person to be served, order that service be accomplished by publication." The Court finds that the traditional and alternative means of service have proved to be impracticable. Plaintiff's proposed means of service by publication—"publishing the summons and a statement describing how a copy of the pleading being served may be obtained at least once a week for 4 successive weeks . . . via the Arizona Business Gazette, Republic Edition, which is the newspaper associated with the Arizona Republic that publishes legal notices" (Doc. 15 at 7)—constitutes "the best means practicable in the circumstances for providing the person with notice of the action's commencement." Ariz. R. Civ. P. 4.1(l)(1)(B).

…

…

- 5 -

Accordingly,

**IT IS ORDERED** that:

1.    Plaintiff's motion (Doc. 15) is **granted**.

2.    Service on Defendant Palacios may be accomplished by publishing the summons and a statement describing how a copy of the pleading being served may be obtained at least once a week for 4 successive weeks via the Arizona Business Gazette, Republic Edition, which is the newspaper associated with the Arizona Republic that publishes legal notices.

3.    The deadline for Plaintiff to serve Defendant Palacios is extended by 90 days.

Dated this 16th day of March, 2026.

_____
Dominic W. Lanza
United States District Judge